# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAULA AMMAR,<br><br>    Plaintiff,<br><br>    v.<br><br>DENIS MCDONOUGH, SECRETARY, U.S.<br>DEPARTMENT OF VETERAN AFFAIRS,<br><br>    Defendant. | C.A. No. 22-1608-GBW |

---

Gary Aber, ABER, BAKER & OVER, Wilmington, DE; Nekeisha L. Campbell, Laura L. Nagel, ALAN LESCHT AND ASSOCIATES, PC, Washington, DC.

*Counsel for Plaintiff*

David C. Weiss, Shamoor Anis, Claudia L. Pare, U.S. DEPARTMENT OF JUSTICE, Wilmington, DE.

*Counsel for Defendant*

## MEMORANDUM OPINION

March 4, 2025
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Paula Ammar ("Ammar" or "Plaintiff") filed her Complaint (D.I. 1) against Denis McDonough ("McDonough" or "Defendant") alleging violations of Title VII of the Civil Rights Act of 1964. Pending before the Court is Defendant's Motion for Summary Judgment (D.I. 29) ("McDonough's Motion"), which has been fully briefed (*see* D.I. 30; D.I. 36; D.I. 38). For the following reasons, the Court GRANTS McDonough's Motion.

## I.    BACKGROUND

"Plaintiff is [an] African American [nurse] . . . . [and] began working for Defendant in December 2007." D.I. 1 ¶¶ 8-9; *see* D.I. 8 ¶¶ 8-9; *see also* ECF No. 31-1 at PageID 194. "In April 2017, Plaintiff started working at . . . [an] [o]utpatient [c]linic in Georgetown, Delaware [(the 'Georgetown Clinic')]." D.I. 1 ¶ 10; *see* D.I. 8 ¶ 10; *see also* ECF No. 31-1 at PageID 194. At the Georgetown Clinic, Plaintiff's coworkers included: Nurse Manager Meg-Marie Ryan ("Nurse Ryan"); Chief of Community Care Williams Griffiths ("Chief Griffiths"); and Dr. Patricia Chavarry ("Dr. Chavarry"). *See* D.I. 1 ¶¶ 11-12, 23, 76; D.I. 8 ¶¶ 11-12, 23, 76; *see also* ECF No. 31-1 at PageID 194-96.

After a series of events, "Plaintiff began working at the Dover [C]linic in June 2018." D.I. 1 ¶ 72; *see* D.I. 8 ¶ 72; *see also* ECF No. 31-1 at PageID 197. At the Dover Clinic, Plaintiff was supervised by Saino Henries. *See* D.I. 1 ¶¶ 77, 87; *see* D.I. 8 ¶¶ 77, 87; *see also* ECF No. 31-1 at PageID 198. "On September 7, 2018, [Chief] Griffiths permanently assigned Plaintiff to the Dover [C]linic." D.I. 1 ¶ 84; *see* D.I. 8 ¶ 84; *see also* ECF No. 31-1 at PageID 199.

"Ammar filed a formal complaint, asserting that the [U.S. Department of Veteran Affairs (the 'VA')] subjected her [to] a hostile work environment, disparate treatment, and retaliation." ECF No. 31-1 at PageID 191; *see* D.I. 1 ¶ 6; D.I. 8 ¶ 6. On September 19, 2022, "[t]he [Equal

Employment Opportunity] Commission [('EEOC')] [] . . . enter[ed] judg[]ment in favor of the [VA]." ECF No. 31-1 at PageID 191; *see id.* at PageID 206-218.

On December 19, 2022, Plaintiff filed suit against Defendant. *See* D.I. 1 ¶ 2 ("Denis McDonough is the Secretary of the Department of the Veteran Affairs and is named in his official capacity as the Defendant that employed Plaintiff."); D.I. 8 ¶ 2. Plaintiff's Complaint lists the following three counts, each of which arises under Title VII of the Civil Rights Act of 1964: (1) "Title VII – Race Discrimination: Hostile Work Environment at the Georgetown Clinic"; (2) "Title VII – Race Discrimination: Letter of Counseling"; and (3) "Title VII – Race Discrimination: Work Assignments." D.I. 1 at 12-13 (capitalization and emphasis altered).

On November 12, 2024, Defendant "move[d] for summary judgment on all counts on grounds that there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law." D.I. 29 at 1. Plaintiff opposes and responds that "the [C]ourt should deny Defendant's Motion for Summary Judgment [(D.I. 29)] and allow the case to proceed to a hearing." D.I. 36 at 1.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* at 308 (quoting *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016)).

**B.      Title VII of the Civil Rights Act of 1964**

"Congress enacted Title VII of the Civil Rights Act of 1964 to protect against discriminatory employment practices on the basis of race, color, religion, sex, or national origin." *Rich v. Univ. of Delaware & Chief Patrick Ogden*, No. CV 22-27-RGA, 2023 WL 4265457, at *2 (D. Del. June 29, 2023). "Workplace behavior may violate Title VII in a variety of ways." *Kengerski v. Harper*, 6 F.4th 531, 537 (3d Cir. 2021).

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against[1] any individual with respect to his compensation, terms, conditions, or privileges of employment, because of[2] such individual's race, color, religion, sex, or national origin.'" *Muldrow*, 601 U.S. at 354 (quoting 42 U.S.C. § 2000e-2(a)(1)). Title VII also "makes it unlawful for an employer 'to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 548 n.1 (2015) (emphasis removed) (quoting 42 U.S.C. § 2000e-2(a)(2)).

---

[1] "The words 'discriminate against' . . . refer to 'differences in treatment that injure' employees." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354 (2024) (quoting *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020)).

[2] "Title VII's because of test incorporates the simple and traditional standard of but-for causation." *Bostock,* 590 U.S. at 656 (internal quotation marks omitted). "That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause." *Id.* "In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id.*

### III.    SUMMARY OF FACTS

Defendant contends that the following undisputed facts are essential to McDonough's

Motion:[3]

1. Plaintiff Paula Ammar, who is black, has been employed as a registered nurse ("RN") by the Department of Veteran Affairs ("VA") since 2013.  Plaintiff began working as an RN at the VA Georgetown Clinic ("Clinic") in April 2017.
2. During Plaintiff's employment there, medical professionals at the Clinic were grouped into five patient-aligned care teams ("PACTs").  Each PACT comprised a provider (either a doctor or nurse practitioner), an RN, a licensed practical nurse ("LPN"), a secretary ("MSA"), and a social worker.
3. Head Nurse ("HN") Meg-Marie Ryan assigned nurses to the PACTs.  When the Clinic experienced changes, including when a PACT member left, HN Ryan sometimes rotated PACT assignments.
4. RN duties included seeing patients, answering medical questions, providing education, fielding patient messages, providing patients their results, calling back patients with information, or requesting information.  The role was "intertwined" with that of other members of the PACT and included doing "anything that was asked."  The assigned RN served as the manager of each PACT.  Each RN also had ancillary duties, which could include working in the lab to collect blood samples, serving on committees, and participating in a women's health clinic.
5. In September 2016, RN Joy Foster, who is black, was assigned to a PACT run by Dr. Patricia Chavarry.  RN Foster was paired with LPN Jacqueline May, who is white.  RN Foster and Dr. Chavarry "formed a pretty good working relationship."  LPN May left the Clinic in November 2016 and LPN Leslie Calvert, who is Asian, replaced her in the PACT.
6. RN Foster left the Clinic in April 2017.  HN Ryan assigned RN Joe Skrownski (white) to Dr. Chavarry's PACT.
7. When Plaintiff joined the Clinic, HN Ryan assigned her to a PACT with LPN Dennis Evans (black).  Thereafter, the provider left so HN Ryan assigned Plaintiff and LPN Evans to a new PACT.

---

[3] Defendant identified these "facts" through the Scheduling Order's requirement that "[a]ny motion for summary judgment shall be accompanied by a separate concise statement, not to exceed six (6) pages, which details each material fact which the moving party contends is essential for the Court's resolution of the summary judgment motion (not the entire case) and as to which the moving party contends there is no genuine issue to be tried."  D.I. 19 ¶ 9(b).  These "facts" are not in dispute at the summary judgment stage, because Plaintiff did not "include with its opposing papers a response to the moving party's concise statement, not to exceed six (6) pages, which admits or disputes the facts set forth in the moving party's concise statement on a paragraph-by-paragraph basis."  *Id.*; *see id.* ("Failure to respond to a fact presented in the moving party's concise statement of facts shall indicate that fact is not in dispute for purposes of summary judgment."); *see also Osborne v. Univ. of Delaware Libr. Admin.*, No. CV 16-0704-MN, 2019 WL 3944016, at *3 (D. Del. Aug. 21, 2019).

8. In September 2017, the Clinic moved to a new location. Prior to the relocation, HN Ryan told the nurses that "when we move to the new clinic, we're going to change teams." Around that time, LPN Calvert (who had worked on Dr. Chavarry's PACT for about a year) requested a transfer to a different PACT. HN Ryan transferred RN Skrownski and LPN Calvert to another PACT, and HN Ryan assigned Plaintiff to Dr. Chavarry's PACT with LPN Julie Medeiros (white). LPN Medeiros had previously been assigned to Dr. Chavarry's PACT.

9. Three months later, in December 2017, Plaintiff started asking to be moved to a different PACT because she was "overwhelmed." HN Ryan responded that Plaintiff's PACT assignment was new and that Plaintiff should try to work with her current team. On January 11, 2018, Plaintiff again asked to be moved. HN Ryan stated that she would consider Plaintiff's request.

10. In April 2017, when Plaintiff joined the Clinic, HN Ryan assigned her to work in the lab three days a week while other RNs were assigned two days a week. Plaintiff chose not to participate in a Women's Health clinic, on a skin care committee, or to serve as a wound nurse. During this time, RN Skrownski was responsible for two PACT teams instead of one. Plaintiff even complained that HN Ryan was overburdening RN Skrownski. HN Ryan stated at the time that this configuration was "the most balanced coverage [she could] make for the lab," and "the fairest way she could think of to do it[.]"

11. By December 2017, HN Ryan reduced Plaintiff's lab assignments to two days a week. In January 2018, HN Ryan relieved Plaintiff of her lab duties entirely. In February 2018, HN Ryan added Plaintiff back onto the lab schedule for one day a week while a white nurse was scheduled to work the lab two days a week.

12. On or about January 11, 2018, HN Ryan issued Plaintiff a letter of counseling "regarding deferring requested delivery of results, medical information and secure messages by a Provider to Patients." HN Ryan noted that Plaintiff had been "demonstrating a pattern of deferring care back to the Provider, when asked to notify a Veteran in regards to lab results, secure messages, and outside record retrieval." HN Ryan stated that she had addressed these issues "with [Plaintiff] on previous occasion, Dec. 2017." HN Ryan noted that Plaintiff had instructed a 79-year-old veteran "to contact his outside urologists to obtain his doctors notes indicating the need for an increase in dose of medication," and send those notes to Plaintiff so the Provider could rewrite the prescription.

13. HN Ryan also quoted the Nurse II Functional Statement to explain that "[t]he RN Care Manager is responsible for collaborating with services internal and external to the VA to facilitate care transition in order to effectively meet the patients' needs." Additionally, HN Ryan explained that "[i]t is not acceptable for a Nurse Care manager to defer care of a patient to other staff and back to the Provider when the Provider has given you written direction on what to do for the patient."

14. [] HN Ryan clarified that the letter was not a "formal disciplinary action," and would be destroyed barring further problems in a six-month period.

15. On or about February 14, 2018, HN Ryan gave Plaintiff a "satisfactory" performance rating for the time-period from March 19, 2017 through March 19,

2018. A "satisfactory" performance means the individual "[h]as met all criteria, at times exceeds expectations."

16. On June 22, 2018, LPN Medeiros informed HN Ryan that "Ms. Ammar RN yells at her when she tries to talk to her." HN Ryan attempted to discuss this with Plaintiff, but the conversation became heated, with both Plaintiff and HN Ryan raising their voices.

17. The elevated voices drew the attention of Head Chief Nurse ("HCN") Craige. HCN Craige spoke with both HN Ryan and Plaintiff and temporarily relocated Plaintiff out of the Clinic to a new PACT at Dover Clinic.

18. The VA then conducted a fact-finding investigation and determined that Plaintiff and HN Ryan's issues related to "interpersonal relationships" and that returning Plaintiff to the Clinic did not pose any safety concerns.

19. At Plaintiff's request, the VA permanently moved her to Dover.

20. On or about August 17, 2018, HN Ryan again gave Plaintiff a "satisfactory" performance rating for the time-period through August 25, 2018.

21. In January 2018, a patient on Dr. Chavarry's PACT referred to a black nurse as a "n***er." The slur was not directed at Plaintiff and she did not hear it. In response, HN Ryan asked Plaintiff to "only do behind the scenes" work for this patient so she would have no personal interaction with him.

22. In March 2018, an unknown person wrote "KKK" in the men's bathroom at the Clinic. In response, HN Ryan contacted the police chief and asked that he visit the Clinic to "address safety issues related to the graffiti written on the bathroom wall." The chief agreed but police were unable to find the vandal. Plaintiff never saw the graffiti.

D.I. 31 ¶¶ 1-22 (some alterations in original) (citations and footnotes omitted).[4]

## IV.    DISCUSSION

### A.    Summary Judgment Motion 1: The Court Grants McDonough's Motion for Summary Judgment on Count II[5]

Defendant contends that he is entitled to summary judgment on Count II, because "the issuance of the Letter of Counseling does not constitute racial discrimination." D.I. 30 at 10

---

[4] Plaintiff had the opportunity, but did not elect to, "include with [her] opposing papers a separate concise statement, not to exceed four (4) pages, which sets forth material facts as to which the opposing party contends there is a genuine issue to be tried." D.I. 19 ¶ 9(b). While Plaintiff's opposition brief includes a section titled "Statement of Material Facts," see D.I. 36 at 1 (capitalization and emphasis altered), that section does not comply with the procedural requirements set forth in Paragraph 9(b) of the Scheduling Order.

[5] Although McDonough's Motion is an omnibus motion, Defendant did not rank each ground, in accordance with Paragraph 9(c) of the Scheduling Order. Thus, "the Court will review the [] []

6

(capitalization and emphasis altered).  Plaintiff responds that, "[w]hile Defendant articulated a legitimate, nondiscriminatory reason for issuing the Letter of Counseling, Plaintiff has met her burden of demonstrating that it was simply pretext for discrimination."  D.I. 36 at 17.  For the following reasons, the Court grants McDonough's motion for summary judgment on Count II.

1.    **Summary of Pertinent Facts**

In Count II, Plaintiff contends that "Defendant subjected Plaintiff to race discrimination, in violation of Title VII."  D.I. 1 ¶ 94.  Specifically, Plaintiff asserts that "Defendant issued Plaintiff a Letter of Counseling because of her race."  D.I. 1 ¶ 93; *see* D.I. 36 at 16.[6]  The Letter of Counseling bears the date January 12, 2018 and is addressed from Nurse Ryan to Plaintiff.  *See* ECF No. 37 at PageID 527.

The Letter of Counseling indicates that it is a "Memorandum [] to formally counsel [Plaintiff] regarding deferring requested delivery of results, medical information and secure messages by a Provider to patients."  *Id.*  The Letter of Counseling asserts that "[Plaintiff] ha[s] been demonstrating a pattern of deferring care back to the Provider, when asked to notify a Veteran in regards to lab results, response to secure messages, and outside record retrieval."  *Id.*  The Letter

---

grounds raised by [Defendant] in the order in which they appear and, 'once the Court denies summary judgment as to any single ground . . . , the Court will not address any summary judgment grounds that [appear after].'"  *Int'l Bus. Machines Corp. v. Zynga Inc.*, No. CV 22-590-GBW, D.I. 538 at 16 (D. Del. Aug. 29, 2024) (some alterations in original) (quoting *CAO Lighting, Inc. v. Gen. Elec. Co.*, No. CV 20-681-GBW, 2023 WL 387585 (D. Del. Jan. 25, 2023)).

[6] Defendant represents that the letter is found at ECF No. 31-8 at PageID 330-31.  *See* D.I. 31 ¶ 12.  Plaintiff represents that the letter is found at ECF No. 37 at PageID 527-29.  *See* D.I. 37 at 1.  The parties' respective submissions bear different bates numbers, however.  *Compare* ECF No. 31-8 at PageID 330, *with* ECF No. 37 at PageID 527.  While the letters are similar, they are not identical.  For example, the letters are dated a day apart.  *Compare* ECF No. 31-8 at PageID 330, *with* ECF No. 37 at PageID 527.  Additionally, unlike Defendant's copy of the letter, Plaintiff's copy of the letter bears the signature of Nurse Ryan.  *Compare* ECF No. 31-8 at PageID 331, *with* ECF No. 37 at PageID 529.  The Court will cite to Plaintiff's copy of the letter.

of Counseling asserts that it is a "counseling memo" and "not a formal disciplinary action." *Id.* at

PageID 528. The Letter of Counseling states that "it will not be placed into [Plaintiff's] Official

Personnel Folder" and,"[i]f there are no further problems within [a] six-month period, [Nurse

Ryan's] copy of th[e] document will be destroyed." *Id.* at PageID 528-29. The Letter of

Counseling warns Plaintiff that it "may be used to support disciplinary action if further problems

occur." *Id.*

## 2.    Legal Standard

"To survive summary judgment on a Title VII disparate treatment claim, a plaintiff must

first establish a prima facie case that (1) [s]he is a member of a protected class; (2) [s]he is qualified

for the position [s]he sought to retain or attain; (3) [s]he suffered an adverse employment action;

and (4) the adverse action occurred under circumstances that may give rise to an inference of

intentional discrimination." *LeCadre v. Att'y Gen. Pennsylvania*, No. 23-2898, 2024 WL

2763829, at *2 (3d Cir. May 30, 2024) (nonprecedential); *see Williams v. Sch. Dist. of

Philadelphia*, No. 23-2060, 2024 WL 1088465, at *2 (3d Cir. Mar. 13, 2024) (nonprecedential).

If a plaintiff "does not offer direct evidence of discrimination," then "she must prove

discrimination using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 . . . (1973)." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 276 (3d Cir. 2024); *see

Perry v. New Jersey Dep't of Corr.*, No. 23-2207, 2024 WL 3384920, at *1 (3d Cir. July 12, 2024)

(nonprecedential) ("Discrimination claims brought under Title VII are subject to the burden-

shifting framework outlined in *McDonnell Douglas*.").

"Under the *McDonnell Douglas* framework, the plaintiff has the 'initial burden ... of

establishing a prima facie case of ... discrimination.'" *Peifer*, 106 F.4th at 276 (alterations in

original) (quoting *McDonnell Douglas*, 411 U.S. 792). "Although the Supreme Court has

repeatedly emphasized that the elements of that prima facie case will vary with different factual

situations, it has said that at root, the plaintiff's initial burden is to show '[adverse] actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under [Title VII].''" *Id.* (alterations in original) (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567 (1978)). "[A]n adverse employment action means simply that the employee suffered 'some harm' to a term or condition of employment—in other words, that the employer treated the employee 'worse' because of a protected characteristic." *Id.* at 277 (quoting *Muldrow*, 601 U.S. 346).[7]

"If a plaintiff can establish a prima facie case of discrimination, the burden shifts to the defendant 'to provide a legitimate, non-discriminatory reason for its actions.'" *Bello v. United Pan Am Fin. Corp.*, No. 24-2052, 2025 WL 275109, at *2 (3d Cir. Jan. 23, 2025) (nonprecedential) (quoting *Fowler v. AT&T, Inc.*, 19 F.4th 292 (3d Cir. 2021)); *see Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017); *Vermeer v. Univ. of Delaware*, 710 F. Supp. 3d 401, 414 (D. Del. 2024).[8]

---

[7] "[T]he Supreme Court held in *Muldrow* . . . that, contrary to [Third Circuit] prior precedent, an employee need not demonstrate that the asserted adverse employment action was a 'serious and tangible' employment-related harm." *Peifer*, 106 F.4th at 277 (quoting *Muldrow*, 601 U.S. 346); *see, e.g., Russo v. Bryn Mawr Tr. Co.*, No. 22-3235, 2024 WL 3738643, at *4 n.3 (3d Cir. Aug. 9, 2024) (nonprecedential) ("*Muldrow* arguably abrogated [*Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323 (3d Cir. 2015)] so that a suspension with pay might, under some circumstances, constitute an adverse employment action."); *Xiao v. SLM Corp.*, No. CV 23-1238-CFC, 2024 WL 3898682, at *2 (D. Del. Aug. 22, 2024) ("The Third Circuit identified *Jones* and another case as its prior precedent that had been overruled by *Muldrow*."); *Dzibela v. BlackRock Inc.*, No. CV 23-02093 (RK) (JBD), 2024 WL 4349813, at *11 n.9 (D.N.J. Sept. 30, 2024) ("*Muldrow* lowered the bar for what constituted an adverse employment action.").

[8] Courts have discretion to start at this step when applying the *McDonnell Douglas* framework. *See In re Trib. Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018) ("For our purposes, we adopt the same position as the [d]istrict [c]ourt and assume, without deciding, that Younge has proven a *prima facie* case of racial discrimination. As such, we move on to the second step of the framework and evaluate whether WPHL has provided a legitimate, non-discriminatory reason for his termination. If it cannot satisfy this burden, Younge is entitled to summary judgment in his favor.").

"If [the defendant] does, the burden shifts back to the plaintiff to provide evidence that this reason was pretext for discrimination, such that a factfinder could either '(1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Bello*, 2025 WL 275109, at *2 (alterations in original) (quoting *Fowler*, 19 F.4th 292); *see Castleberry*, 863 F.3d at 263; *Vermeer*, 710 F. Supp. 3d at 414.

"To satisfy the first prong, [the plaintiff] 'cannot simply show that [the defendant's] decision was wrong or mistaken ... [but] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [the defendant] did not act for [the asserted] non-discriminatory reasons.'" *Keys v. Hanover Foods Corp.*, No. CV 19-435-CFC, 2021 WL 1751851, at *4 (D. Del. May 4, 2021) (some alterations in original) (quoting *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)).

"To satisfy the second prong and show that discrimination was more likely than not a motivating or determinative cause of [the defendant]'s action, [the plaintiff] 'must point to evidence with sufficient probative force for a factfinder to make this conclusion; i.e. that [the defendant] has previously discriminated against him, that [the defendant] has discriminated against other persons within [the plaintiff]'s protected class or within another protected class or that [the defendant] has treated more favorably similarly situated persons not within the protected class." *Id.* (quoting *Parker v. Verizon Pa., Inc.*, 309 F. App'x 551 (3d Cir. 2009) (nonprecedential)).

**3.    Analysis**

As noted above, the parties dispute whether Defendant is entitled to summary judgment as a matter of law on Count II ("Title VII – Race Discrimination: Letter of Counseling"). "To defeat [the] motion for summary judgment, [] [P]laintiff must show a prima facie case of discrimination,

which requires that [s]he demonstrate: '(1) [s]he was a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) ... the adverse employment action 'occurred under circumstances that could give rise to an inference of intentional discrimination.''" *Williams*, 2024 WL 1088465, at *2 (some alterations in original) (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417 (3d Cir. 2013)).  "If [Plaintiff] satisfies this burden, the burden shifts to [] [Defendant] to provide a legitimate, non-discriminatory reason for the alleged adverse employment action." *Finizie v. Sec'y United States Dep't of Veterans Affs.*, No. 23-2594, 2024 WL 3887725, at *2 (3d Cir. Aug. 21, 2024) (nonprecedential).  "If [] [Defendant] does so, the burden shifts back to [Plaintiff] to show [] [Defendant]'s reason was pretextual." *Id.*

Here, the parties dispute whether Plaintiff has met her burden of establishing a prima facie case of discrimination.  Specifically, with respect to the Letter of Counseling, the parties dispute whether Plaintiff has met her burden in establishing an adverse employment action.  As noted previously, "an adverse employment action means simply that the employee suffered 'some harm' to a term or condition of employment—in other words, that the employer treated the employee 'worse' because of a protected characteristic."[9]

Defendant contends that "Plaintiff cannot make a prima facie showing that the [L]etter of [C]ounseling was an adverse employment action because the letter was not a 'formal disciplinary action' but was instead an attempt to improve Plaintiff's performance and would have been

---

[9] *Peifer*, 106 F.4th at 277 (quoting *Muldrow*, 601 U.S. 346); *see, e.g.*, *Walker v. Health Partners Plan, Inc.*, No. CV 23-1089, 2025 WL 567014, at *5-6 (E.D. Pa. Feb. 19, 2025) (finding employment action was not adverse); *Jenkins v. Ciocca Mgmt., Inc.*, No. 5:23-CV-05115-JMG, 2025 WL 62803, at *7 (E.D. Pa. Jan. 9, 2025) (court "reject[ing] [d]efendant's argument that [p]laintiff's discrimination claim fails as a matter of law for lack of an adverse employment action"); *Mena v. E. Penn Mfg.*, No. 5:23-CV-02688-JMG, 2024 WL 5250352, at *3-4 (E.D. Pa. Dec. 30, 2024) (finding "[p]laintiff [established] the third element of her *prima facie* case").

destroyed if no further problems occurred in a six-month period." D.I. 30 at 10. The entirety of

Plaintiff's response is as follows (D.I. 36 at 17 (citations omitted)):

> In the instant case, Plaintiff has met her burden. First, she established a prima facie
> case of race discrimination. . . . A Letter of Counseling can constitute an adverse
> action when there is some indication of detriment. Here, Ms. Ryan used the Letter
> of Counseling as the basis to issue Plaintiff a lowered rating.[10] Defendant's policy
> is clear that performance ratings are directly linked to an employee's ability [to]
> advance within their current grade or to be promoted to a higher grade.[11] Having
> Ms. Ryan use the Letter of Counseling as the basis for her lowered rating ensured
> that Plaintiff would not be eligible for advancement, which constitutes a detriment.

Defendant counters that, "[b]ecause Plaintiff only identifies a potential, speculative harm that she

could have suffered, rather than actual, tangible detriment that she in fact suffered, the Letter [of

Counseling] is not an adverse employment action." D.I. 38 at 2. As explained below, the Court

finds that Plaintiff has not established that the Letter of Counseling constitutes an adverse

employment action.

The Letter of Counseling resembles a letter of reprimand. Some courts "have held that a

letter of reprimand does not constitute an adverse employment action for purposes of a

discrimination claim unless the reprimand was tethered to an adverse impact on the terms and

conditions of the plaintiff's employment." *Credle v. Virginia Cmty. Coll. Sys.*, No. 3:24CV233

(DJN), 2025 WL 27827, at *8 (E.D. Va. Jan. 3, 2025) ("While Plaintiff alleges that the Letter of

Reprimand caused her 'emotional distress' and 'the loss of career path opportunities,' neither of

---

[10] To support this assertion, Plaintiff cites to Exhibit 10 (ECF No. 37 at PageID 530-32). *See*
D.I. 36 at 17. The cited document is titled "Proficiency Report" and is dated August 17, 2018.
ECF No. 37 at PageID 531-32. Having reviewed that document, it is unclear to the Court how
Plaintiff's citation supports her corresponding assertions. *See* D.I. 38 at 1 ("Plaintiff's
performance appraisal (issued more than seven months after the Letter) does not even mention the
Letter [of Counseling], let alone rely on it as a basis for her performance rating.").

[11] To support this assertion, Plaintiff cites to page 98 of Exhibit 11 (ECF No. 37 at PageID 533-
631). *See* D.I. 36 at 17. Having reviewed that document, it is unclear to the Court how Plaintiff's
citation supports her corresponding assertion.

these allegations show that the Letter o[f] Reprimand detrimentally altered the terms and conditions of [p]laintiff's employment. . . . As such, the Letter o[f] Reprimand did not constitute an adverse employment action for purposes of a Title VII discrimination claim."); *see Obermeyer v. McDonough*, No. 1:23-CV-711, 2024 WL 3890686, at *6 n.4 (S.D. Ohio Aug. 21, 2024) ("Obermeyer also pleads that in April 2022, Dr. Koenigsknecht 'insist[ed] that she come into his office where he demanded that she sign a formal counseling document that would be punitive in nature.' . . . She did not allege that she received any punitive discipline or that the terms or conditions of her employment were affected. . . . Without more, Obermeyer's formal counseling allegation is not sufficient to constitute an adverse action even at the pleading stage.").

For example, in *Kelso v. Vilsack*, the court found that a letter of reprimand that "did not affect any of the terms, conditions, or privileges of [the] [plaintiff]'s employment" and was by itself insufficient "to allege an adverse employment action." 2024 WL 5159101, at *6-7 (D.D.C. Dec. 18, 2024) ("The [c]ourt concludes that the letters issued to Ms. Kelso do not constitute adverse employment actions. . . . While Ms. Kelso is correct that 'there is no categorical prohibition on the letter of reprimand constituting an adverse employment action,' the court in *Baloch* found a similar letter not 'materially adverse'—a less stringent standard than adverse employment action—to plausibly allege a retaliation claim. The letters given to Ms. Kelso contain similar 'job-related constructive criticism,' including missed assignments and information regarding Defendant's leave policies. While the letters indicate that a failure to comply could result in Ms. Kelso's termination, the issuance of the letters did not affect any of the terms, conditions, or privileges of Ms. Kelso's employment. Simply put, nothing in the letters changed the 'what, where, or when' of her work with [d]efendant. Therefore, this incident fails to allege an adverse employment action.") (citations omitted).

13

In the present action, the Court finds that Plaintiff has failed to meet her burden of establishing that she "suffered 'some harm' to a term or condition of employment" due to the Letter of Counseling. *Peifer*, 106 F.4th at 277 (quoting *Muldrow*, 601 U.S. 346). "First, [] [Plainitff] cites to no authority supporting her argument that letters of this sort arise to an adverse employment action in a discrimination claim." *Kelso*, 2024 WL 5159101, at *7; *see, e.g., Merida Delgado v. Gonzales*, 428 F.3d 916, 921 (10th Cir. 2005) ("Because Mr. Delgado has not supported these arguments with legal authority or argued that his 'positions are sound despite a lack of supporting authority or in the face of contrary authority, ... we decline to consider these arguments.'") (alterations in original); *United States v. Jones*, 744 F.3d 1362, 1370 n.2 (D.C. Cir. 2014) ("We decline to consider this issue, however, because Jones offers only 'bare-bones arguments' unsupported by any citations to legal authority."); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Schaefer devotes only a scant paragraph to the issue. He cites no authority and simply asserts that the ill-fitting scaffolding components constitute a condition of the land. Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Second, while the Letter of Counseling includes "job-related constructive criticism," "nothing in the letter[] changed the 'what, where, or when' of her work with Defendant." *Kelso*, 2024 WL 5159101, at *7 (quoting *Muldrow*, 601 U.S. 346). Plaintiff asserts that Nurse "Ryan used the Letter of Counseling as the basis to issue Plaintiff a lowered rating." D.I. 36 at 17. However, as noted previously, the preceding assertion is attorney argument that lacks support and does not create a genuine issue of fact to preclude summary judgment.[12] "It is well-established

---

[12] *See supra* note 10; *see also Cradle IP, LLC v. Texas Instruments, Inc.*, 5 F. Supp. 3d 626, 639 (D. Del. 2013) (noting that at the summary judgment stage "[i]ssues of fact are raised by conflicting

that a non-moving party in a motion for summary judgment must present something more than 'mere allegations, general denials or ... vague statements' to defeat the motion." *Keys*, 2021 WL 1751851, at *3 (alteration in original) (quoting *Trap Rock Indus., Inc. v. Loc. 825, Int'l Union of Operating Eng'rs, AFL-CIO*, 982 F.2d 884 (3d Cir. 1992)).  Plaintiff did not, however, "'go beyond the pleadings' and 'designate specific facts' in the record 'showing that there is a genuine issue for trial.'"  *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 93 (3d Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  As "[Plaintiff] has not proven a prima facie case of discrimination under Title VII, [] summary judgment [is] appropriate." *Perry*, 2024 WL 3384920, at *2.

"Although the failure to establish a *prima facie* case is sufficient to grant summary judgment to an employer, [the Court] will complete the analysis under the *McDonnell Douglas* framework." *Pekol v. CSL Behring LLC*, No. 23-2530, 2024 WL 1988832, at *3 (3d Cir. May 6, 2024) (nonprecedential).  As discussed below, with respect to the Letter of Counseling, the Court finds that Defendant "has put forward legitimate, nondiscriminatory explanations for each of its actions, and [Plaintiff] has not shown 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in those explanations 'that a reasonable factfinder could rationally find them unworthy of credence.'" *Perry*, 2024 WL 3384920, at *2 n. 5 (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702 (3d Cir. 2006)).

The parties agree, and the Court finds, that "Defendant articulated a legitimate, nondiscriminatory reason for issuing the Letter of Counseling." D.I. 36 at 17; *cf. Bamba v. United*

_____

evidence, not by attorney argument or conclusory expert opinions"), *aff'd*, 588 F. App'x 1000 (Fed. Cir. 2015); *Golden Bridge Tech., Inc. v. Apple Inc.*, 937 F. Supp. 2d 504, 514 (D. Del. 2013) ("As Apple's conclusion that the ramp-up and ramp-down periods are unnecessary is not supported by the record, it is attorney argument that does not create a genuine issue of fact to preclude summary judgment."), *aff'd*, 758 F.3d 1362 (Fed. Cir. 2014).

*States Dep't of Homeland Sec.*, No. 22-CV-7407 (LJL), 2024 WL 3924810, at \*24 (S.D.N.Y. Aug. 23, 2024) ("Defendants state that the [letter of reprimand] and subsequent suspensions were all related to the employer's legitimate interest in addressing 'insubordination and misconduct.' That argument is well-founded. An employer has an obvious and legitimate interest in addressing employee misconduct.") (citation omitted).

"To avoid summary judgment [as] Defendant has offered a legitimate reason for its employment action, Plaintiff 'must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by [] [D]efendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Oldham v. Div. of State Police*, No. CV 21-801-RGA, 2024 WL 2260361, at \*8 (D. Del. May 17, 2024) (quoting *Fuentes*, 32 F.3d 759).

The entirety of Plaintiff's contentions on pretext are as follows (D.I. 36 at 17-18 (citations omitted)):

> Plaintiff has met her burden of demonstrating that it was simply pretext for discrimination. Specifically, Ms. Ryan accused Plaintiff of violating Defendant's policy by asking a patient to have his doctor submit medical documentation to support his request for an increase in the dosage of his medication. However, as explained above in ¶¶ 28 – 32, Plaintiff's actions were consistent with Defendant's "one call resolution policy" and did not run afoul of any other policies. Ms. Ryan also accused Plaintiff of deferring care back to Dr. Chavarry when asked to communicate lab results to patients. However, as explained above in ¶¶ 16 – 18 and 34 – 35, Dr. Chavarry frequently asked Plaintiff to perform duties that were outside the scope of her role as a nurse, including reading and interpreting test results to patients and examining patients instead of the doctor doing so. As an RN, Plaintiff was not authorized, nor was she taught how[] to read and interpret the results of CT scans, CAT scans, MRIs, or X-rays. Further, as cited above in ¶ 17, Defendant's own policy precluded Plaintiff from interpreting and providing test results to patients.

Defendant counters that "Plaintiff provides no [] evidence" "that it was her race, and not her performance, that motivated HN Ryan to issue the Letter [of Counseling]." D.I. 38 at 3. As

16

explained below, the Court finds that Plaintiff has failed to meet her burden "to provide evidence that [Defendant's] reason was pretext for discrimination." *Bello*, 2025 WL 275109, at \*2.

"[U]nder the *McDonnell Douglas* burden-shifting framework. . . . [t]o discredit an employer's articulated legitimate reason for [its action], 'the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.'" *Moses v. United States Steel Corp.*, No. 23-2605, 2025 WL 66348, at \*1-2 (3d Cir. Jan. 10, 2025) (nonprecedential) (quoting *Fuentes*, 32 F.3d 759).[13] "Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id.* (quoting *Fuentes*, 32 F.3d 759). "Accordingly, the plaintiff 'must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason.'" *Id.* (quoting *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101 (3d Cir. 1997)).

Here, even assuming *arguendo* that the Letter of Counseling's criticisms of Plaintiff were misplaced,[14] Plaintiff has not explained why a reasonable factfinder could infer that the Letter of Counseling was pretext for discrimination. *Cf. Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881 (3d Cir. 2011) (nonprecedential) ("Wilcher merely argues that the investigatory report was incorrect. To discredit the USPS's explanation, Wilcher must do more than argue that the decision

---

[13] While the *Moses* panel was addressing "claims of discrimination in violation of 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act," 2025 WL 66348, at \*1, the Court will rely on portions of the *Moses* opinion that are also applicable to Title VII claims.

[14] The Court is "not here to decide 'whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'" *Id.* (quoting *Keller*, 130 F.3d 1101).

to terminate him was wrong or mistaken. Inaccuracy does not establish pretext. The issue is not whether the USPS's decision was unwise or even correct but whether the USPS unlawfully discriminated against Wilcher. Wilcher offers no evidence to support his assertion that the USPS's reason for terminating him was pretextual. He simply claims, based on his belief that the investigative findings were wrong and that he was treated less favorably than other employees, that he was therefore terminated because of his race and gender. This does not suffice.") (citations omitted).

Thus, the Court finds that Count II fails as a matter of law because Plaintiff has failed to present record evidence to demonstrate that the legitimate, non-discriminatory reason for the Letter of Counseling was pretextual for discrimination. *See, e.g., LeCadre*, 2024 WL 2763829, at *3 ("Even if LeCadre could establish a prima facie case, his claim would fail because, under the burden shifting framework established by *McDonnell Douglas* . . ., he did not demonstrate that the legitimate, non-discriminatory reason offered by the OAG for placing him on paid administrative leave and requiring the fitness-for-duty evaluation was pretextual. . . . LeCadre did not present evidence to permit a factfinder to disbelieve these reasons or to conclude that these proffered legitimate, nondiscriminatory reasons for the assignment were pretextual."); *Bello*, 2025 WL 275109, at *2 ("This record does not support a finding that UACC was motivated by discriminatory or retaliatory intent in firing Bello, rather than its stated reason. Bello's belief that he was fired for some other reason is not sufficient to survive summary judgment.").

**B.    Summary Judgment Motion 2: The Court Grants McDonough's Motion for Summary Judgment on Count III**

Defendant contends that he is entitled to summary judgment on Count III, because "Plaintiff's assignment to Dr. Chavarry's PACT and three days of lab duties do not constitute racial discrimination." D.I. 30 at 12 (capitalization and emphasis altered). Plaintiff responds that

"[w]hile Defendant articulated legitimate, nondiscriminatory reasons for assigning Plaintiff to Dr. Chavarry's PACT and requiring her to work in the lab much longer than her Caucasian counterparts, Plaintiff demonstrated that it was simply pretext for discrimination." D.I. 36 at 18. For the following reasons, the Court grants McDonough's motion for summary judgment on Count III.

1.    **Summary of Pertinent Facts**

In Count III, Plaintiff contends that "Defendant subjected Plaintiff to race discrimination, in violation of Title VII." D.I. 1 ¶ 98. Specifically, Plaintiff asserts that "Defendant assigned Plaintiff to Dr. Chavarry's PACT and gave her additional lab duties because of her race." D.I. 1 ¶ 97; *see* D.I. 36 at 18.

As noted previously, "[e]ach RN [] had ancillary duties, which could include working in the lab to collect blood samples, serving on committees, and participating in a women's health clinic." *Supra* Part III ¶ 4 (quoting D.I. 31 ¶ 4). "Plaintiff chose not to participate in a Women's Health clinic, on a skin care committee, or to serve as a wound nurse." *Id.* ¶ 10 (quoting D.I. 31 ¶ 10). Plaintiff did, however, work in the lab.

"In April 2017, when Plaintiff joined the [Delaware] Clinic, [Nurse] Ryan assigned her to work in the lab three days a week while other RNs were assigned two days a week." *Id.* ¶ 10 (quoting D.I. 31 ¶ 10). "By December 2017, [Nurse] Ryan reduced Plaintiff's lab assignments to two days a week." *Id.* ¶ 11 (quoting D.I. 31 ¶ 11). "In January 2018, [Nurse] Ryan relieved Plaintiff of her lab duties entirely." *Id.* "In February 2018, [Nurse] Ryan added Plaintiff back onto the lab schedule for one day a week while a white nurse was scheduled to work the lab two days a week." *Id.*

As noted previously, "[e]ach PACT comprised a provider (either a doctor or nurse practitioner), an RN, a licensed practical nurse ('LPN'), a secretary ('MSA'), and a social worker."

19

*Id.* ¶ 2 (quoting D.I. 31 ¶ 2). Some nurses were assigned to more than one PACT. *See id.* ¶ 10 (quoting D.I. 31 ¶ 10). Nurse "Ryan assigned nurses to the PACTs." *Id.* ¶ 3 (quoting D.I. 31 ¶ 3). "When the [Delaware] Clinic experienced changes, including when a PACT member left, [Nurse] Ryan sometimes rotated PACT assignments." *Id.* Nurse Ryan altered assignments around the time that "LPN Calvert (who had worked on Dr. Chavarry's PACT for about a year) requested a transfer to a different PACT." *Id.* ¶ 8 (quoting D.I. 31 ¶ 8). Nurse "Ryan transferred RN Skrownski and LPN Calvert to another PACT." *Id.* Nurse "Ryan assigned Plaintiff to Dr. Chavarry's PACT with LPN Julie Medeiros (white)." *Id.*

A few months after her assignment to Dr. Chavarry's PACT, "Plaintiff started asking to be moved to a different PACT because she was 'overwhelmed.'" *Id.* ¶ 9 (quoting D.I. 31 ¶ 9). The next month, "Plaintiff again asked to be moved" out of Dr. Chavarry's PACT. *Id.* Nurse "Ryan stated that she would consider Plaintiff's request." *Id.* Nurse Ryan did not grant Plaintiff's request. Instead, after a series of events and "[a]t Plaintiff's request, the VA permanently moved [Plaintiff] to Dover." *Id.* ¶ 19 (quoting D.I. 31 ¶ 19).

## 2. Legal Standard

The applicable legal standard is found above. *See supra* Part IV.A.2.

## 3. Analysis

As noted above, the parties dispute whether Defendant is entitled to summary judgment as a matter of law on Count III ("Title VII – Race Discrimination: Work Assignments"). "To defeat [the] motion for summary judgment, [] [P]laintiff must show a prima facie case of discrimination, which requires that [s]he demonstrate: '(1) [s]he was a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) ... the adverse employment action 'occurred under circumstances that could give rise to an inference of intentional discrimination.'" *Williams*, 2024 WL 1088465, at *2 (some alterations in original)

(quoting *Burton*, 707 F.3d 417).  "If [Plaintiff] satisfies this burden, the burden shifts to []
[Defendant] to provide a legitimate, non-discriminatory reason for the alleged adverse
employment action." *Finizie*, 2024 WL 3887725, at *2.  "If [] [Defendant] does so, the burden
shifts back to [Plaintiff] to show [] [Defendant]'s reason was pretextual." *Id.*

      In the instant action, the parties dispute whether Plaintiff has met her burden of establishing
a prima facie case of discrimination.  Specifically, with respect to Plaintiff's work assignments,
the parties dispute whether Plaintiff has met her burden in establishing an adverse employment
action.  As noted previously, "an adverse employment action means simply that the employee
suffered 'some harm' to a term or condition of employment—in other words, that the employer
treated the employee 'worse' because of a protected characteristic." *Peifer*, 106 F.4th at 277
(quoting *Muldrow*, 601 U.S. 346).

      Defendant contends that "Plaintiff has [] failed to show that her assignment to Dr.
Chavarry's PACT and her lab duties were adverse employment actions." D.I. 38 at 3.  The entirety
of Plaintiff's contention on this issue is as follows: "Plaintiff has also met her burden regarding
assignment of duties, which can constitute an adverse action if it 'disrupts [Plaintiff's] working
conditions.'" D.I. 36 at 18 (alteration in original) (quoting *D'Ambrosio v. Cresthaven Nursing &
Rehab. Ctr.*, No. 14-06541 (JBS/KMW), 2016 WL 5329592, at *8 (D.N.J. Sept. 22, 2016), *aff'd*,
755 F. App'x 147 (3d Cir. 2018)).  Plaintiff does not, however, "advance [her] contention[] by
connecting law to facts."[15]

---

[15] *Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002); *see, e.g.*, *AtriCure, Inc. v.
Meng*, 12 F.4th 516, 531 (6th Cir. 2021) ("A party does not preserve an issue in our court by raising
it in [a] 'perfunctory' way; the party must connect the relevant facts to the relevant law."); *Lipton
v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 440 n.3 (S.D.N.Y. 2004) ("[T]he argument section
of plaintiff's [m]emorandum contains sparse recitations of various legal propositions, but fails to
connect them to properly cited facts underlying this case.  It is not our responsibility, especially in

Thus, the Court finds that Plaintiff's cursory contention is insufficient to establish that Plaintiff's work assignments constitute adverse employment actions. *See, e.g., Jacobs v. City of Phila.*, No. 24-1696, 2025 WL 560626, at *3 (3d Cir. Feb. 20, 2025) (nonprecedential) ("We do not consider undeveloped arguments."); *ECB USA, Inc. v. Savencia, S.A.*, No. CV 19-731-RGA, 2020 WL 5369076, at *4 (D. Del. Sept. 8, 2020) ("[C]ursory arguments not fully developed by the parties are waived."); *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 441 (D. Del. 2023) ("[A]rguments . . . not squarely argued[] are considered [forfeited].") (some alterations in original). As "[Plaintiff] has not proven a prima facie case of discrimination under Title VII, [] summary judgment [is] appropriate." *Perry*, 2024 WL 3384920, at *2.

"Although the failure to establish a *prima facie* case is sufficient to grant summary judgment to an employer, [the Court] will complete the analysis under the *McDonnell Douglas* framework." *Pekol*, 2024 WL 1988832, at *3. As discussed below, with respect to Plaintiff's work assignments, the Court finds that Defendant "has put forward legitimate, nondiscriminatory explanations for each of its actions, and [Plaintiff] has not shown 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in those explanations 'that a reasonable factfinder could rationally find them unworthy of credence.'" *Perry*, 2024 WL 3384920, at *2 n. 5 (quoting *Tomasso.*, 445 F.3d 702).

The parties agree, and the Court finds, that "Defendant articulated legitimate, nondiscriminatory reasons for assigning Plaintiff to Dr. Chavarry's PACT and requiring her to work in the lab [] longer than her Caucasian counterparts." D.I. 36 at 18.

---

a counseled case, to form plaintiff's arguments for him by researching the record and relevant case law.").

"To avoid summary judgment [as] Defendant has offered a legitimate reason for its employment action, Plaintiff 'must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by [] [D]efendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Oldham*, 2024 WL 2260361, at *8 (quoting *Fuentes*, 32 F.3d 759).

The entirety of Plaintiff's contentions on pretext are as follows (D.I. 36 at 18 (alterations in original)):

> While Defendant articulated legitimate, nondiscriminatory reasons for assigning Plaintiff to Dr. Chavarry's PACT and requiring her to work in the lab much longer than her Caucasian counterparts, Plaintiff demonstrated that it was simply pretext for discrimination. Specifically, Defendant asserted that staff of all races were required to work on Dr. Chavarry's PACT at some point. However, as explained in ¶¶ 14, 15, and 25, Caucasian staff asked to be reassigned from Dr. Chavarry's PACT, their requests were expediently granted. Further, Caucasian RNs were paired with high-performing LPNs to meet Dr. Chavarry's demanding nature. However, Ms. Ryan did not afford either of those same courtesies to Plaintiff or other African American staff. Ms. Ryan also explained that she assigned Plaintiff in the lab because it was "the most balanced coverage [she could] make for the lab" at that time. Ex. 2. However, Defendant has not provided any other explanation for why Plaintiff, and not her Caucasian counterparts, had to work in the lab so often. Further, Defendant did not provide any explanation regarding why Plaintiff was assigned the most difficult and time-consuming task of closing the lab twice per week when her Caucasian counterparts only did so once.

Defendant counters that "Plaintiff [] points to no evidence that it was 'discriminatory animus,' as opposed to staffing needs, that animated [Nurse] Ryan's decisions." D.I. 38 at 5. As explained below, the Court finds that Plaintiff has failed to meet her burden "to provide evidence that [Defendant's] reason was pretext for discrimination." *Bello*, 2025 WL 275109, at *2.

"[U]nder the *McDonnell Douglas* burden-shifting framework. . . . [t]o discredit an employer's articulated legitimate reason for [its action], 'the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether

discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.'" *Moses*, 2025 WL 66348, at *1-2 (quoting *Fuentes*, 32 F.3d 759). "Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id.* (quoting *Fuentes*, 32 F.3d 759).

"To . . . show that discrimination was more likely than not a motivating or determinative cause of [Defendant]'s action, [Plaintiff] 'must point to evidence with sufficient probative force for a factfinder to make this conclusion; i.e. that [Defendant] has previously discriminated against h[er], that [Defendant] has discriminated against other persons within [Plaintiff's] protected class or within another protected class[16] or that [Defendant] has treated more favorably similarly situated persons not within the protected class." *Keys*, 2021 WL 1751851, at *4 (quoting *Parker*, 309 F. App'x 551).

Here, as noted above, "[Plaintiff] attempts to demonstrate pretext by arguing that other non-black [] [] employees were treated more favorably than [her]." *Wilcher*, 441 F. App'x at 881.[17] Defendant responds that "Plaintiff ignores important facts" that distinguish Plaintiff from her coworkers. D.I. 38 at 4-6. As explained below, the Court finds that Plaintiff has not carried her burden of establishing that any comparator coworkers qualify as "similarly situated persons." *Keys*, 2021 WL 1751851, at *4 (quoting *Parker*, 309 F. App'x 551); *see Tolliver v. Trinity Par.*

---

[16] "[A]n employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000).

[17] In making this argument, Plaintiff relies heavily on her own ipse dixit testimony provided in the July 2022 EEOC Hearing (ECF No. 37 at PageID 409).

*Found.*, No. CV 14-1021-LPS, 2017 WL 3288119, at *8 (D. Del. Aug. 2, 2017) ("To make a comparison of her treatment to that of an employee outside her protected class for purposes of a Title VII claim, Tolliver must show that she and the employee(s) are similarly situated in all relevant respects.").

"A plaintiff alleging racial discrimination cannot pick and choose persons perceived to be valid comparables, but must choose similar employees against whom to compare himself." *Zimmerman v. Int'l Longshoreman's Ass'n Loc. 1694*, No. 1:22-CV-01192-JCG, 2024 WL 3104957, at *10 (D. Del. June 24, 2024). "[C]omparator employees need not be identical but must be similarly situated in 'all material respects.'" *Qin v. Vertex, Inc.*, 100 F.4th 458, 474 (3d Cir. 2024) (quoting *In re Trib. Media*, 902 F.3d 384); *see Wilcher*, 441 F. App'x at 882.[18] "To determine whether a comparator is similarly situated, [the Court] conduct[s] 'a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner.'" *Glasson v. Citizens Bank of Pennsylvania*, No. 21-2321, 2022 WL 4077128, at *1 (3d Cir. Sept. 6, 2022) (nonprecedential) (quoting *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296 (3d Cir. 2004)). "Factors that are relevant include whether the employees dealt with the same supervisor, were subject to

---

[18] The *Qin* panel cautioned courts against taking a too "narrow" view on "who can be considered a similarly situated employee." 100 F.4th at 474 ("Vertex attempts to limit who can be considered a similarly situated employee and insists on too narrow a definition: it points to Yawe's assignment on the cloud product and his short tenure at the company rather than his position, supervisor, and job responsibilities. These differences are immaterial for the purpose of establishing a prima facie case. In all material respects, Yawe is an appropriate comparator."). At the same time, Third Circuit panels have suggested that courts should avoid taking a too broad view on who can be considered a similarly situated employee. *Cf. Coley v. New Jersey Transit Corp.*, No. 21-2373, 2022 WL 5240385, at *4 (3d Cir. Oct. 6, 2022) (nonprecedential) ("Coley has not provided any evidence of a similarly situated Caucasian employee who was (1) previously terminated and reinstated for sleeping on the job and warned that he would be automatically terminated if he was caught sleeping on the job again, (2) then purportedly caught sleeping on the job after the warning, and (3) not been recommended for termination by Hall.").

the same standards, and shared similar job responsibilities." *Qin*, 100 F.4th at 474; *see Wilcher*, 441 F. App'x at 882.

In the instant action, Plaintiff has identified comparator coworkers that also reported to Nurse Ryan and shared the same, or at least similar, job titles as Plaintiff. *See* D.I. 36 at 4, 18, 36. This weighs in favor of finding that those comparator coworkers are similarity situated. *See Qin*, 100 F.4th at 474 ("Qin presented Yawe as a comparator. In all 'material respects,' Yawe and Qin are similar. Both men were architects supervised by Harter.").

Importantly, however, Plaintiff has not established that the comparator coworkers "shared similar job responsibilities." *Qin*, 100 F.4th at 474. For example, Plaintiff has not come forward with any evidence that, like Plaintiff, the comparator coworkers similarly "chose not to participate in a Women's Health clinic, on a skin care committee, or to serve as a wound nurse." D.I. 31 ¶ 10; *see* D.I. 38 at 6. Additionally, Plaintiff has not come forward with any evidence that, like certain comparator coworkers, Plaintiff similarly was assigned to more than one PACT. *See* D.I. 31 ¶ 10. Moreover, Plaintiff has not come forward with any evidence that the timing and circumstances of her request to transfer out of Dr. Chavarry's PACT were similar to any such granted transfer requests of a comparator coworker. *See* D.I. 31 ¶ 8; D.I. 38 at 4-5. These shortcomings all weigh against finding that those proffered comparator coworkers are similarity situated. *See Glass v. First Jud. Dist. of Pa.*, 734 F. App'x 136, 140 (3d Cir. 2018) (nonprecedential) ("The evidence shows that [a]ppellant and the OCC Officers did not have the same job functions. It is undisputed that one of [a]ppellant's duties was to maintain order in the courtrooms, thus making his presence essential. His presence was also required to sign in defendants. On the other hand, at least two of the OCC Officers—Mr. Jordan and Ms. Chambers—had offices outside of their assigned courtrooms where they would send emails and perform other duties. Ms. Hill and Mr. Jordan were

26

only required to be in courtrooms as needed.  Therefore, the district court correctly concluded that the OCC officers were not similarly situated to [a]ppellant because of their differing responsibilities.").

On balance, having considered the relevant factors, and having considered the parties' respective contentions, the Court finds that Plaintiff has not carried her burden of establishing that any comparator coworkers qualify as similarly situated persons. *See Tolliver*, 2017 WL 3288119, at *8.

Thus, the Court finds that Count III fails as a matter of law because Plaintiff has failed to present record evidence to demonstrate that the legitimate, non-discriminatory reasons for her assignment to Dr. Chavarry's PACT and her lab duty assignments were pretextual for discrimination. *See, e.g., LeCadre*, 2024 WL 2763829, at *3 ("Even if LeCadre could establish a prima facie case, his claim would fail because, under the burden shifting framework established by *McDonnell Douglas* . . ., he did not demonstrate that the legitimate, non-discriminatory reason offered by the OAG for placing him on paid administrative leave and requiring the fitness-for-duty evaluation was pretextual. . . . LeCadre did not present evidence to permit a factfinder to disbelieve these reasons or to conclude that these proffered legitimate, nondiscriminatory reasons for the assignment were pretextual."); *Bello*, 2025 WL 275109, at *2 ("This record does not support a finding that UACC was motivated by discriminatory or retaliatory intent in firing Bello, rather than its stated reason.  Bello's belief that he was fired for some other reason is not sufficient to survive summary judgment.").

## C.    Summary Judgment Motion 3: The Court Grants McDonough's Motion for Summary Judgment on Count I

Defendant contends that he is entitled to summary judgment on Count I, because "Plaintiff cannot meet her burden to prove she was subjected to a hostile work environment." D.I. 30 at 14

(capitalization and emphasis altered). Plaintiff responds that she "has met her burden to proceed to trial." D.I. 36 at 19 (emphasis removed). For the following reasons, the Court grants McDonough's motion for summary judgment on Count I.

### 1.    Summary of Pertinent Facts

In Count I, Plaintiff contends that "Defendant subjected Plaintiff to race discrimination, in violation of Title VII." D.I. 1 ¶ 90. Specifically, Plaintiff asserts that "[d]uring Plaintiff's employment at the Georgetown [C]linic, Defendant subjected Plaintiff to a hostile work environment because of her race." D.I. 1 ¶ 89; *see* D.I. 36 at 19-20.

To support Count I, Plaintiff relies on the Letter of Counseling and her work assignments. *See* D.I. 36 at 19. Both the Letter of Counseling and Plaintiff's work assignments were discussed above. *See supra* Part IV.A.1 (discussing Letter of Counseling); Part IV.B.1 (discussing Plaintiff's work assignments). Plaintiff also relies on additional events to support Count I, which are discussed below. *See* D.I. 36 at 19-20; *see also* ECF No. 31-1 at PageID 216.

As noted previously, "[i]n January 2018, a patient on Dr. Chavarry's PACT referred to a black nurse [(who is not Plaintiff)] as a 'n***er.'"[19] *Supra* Part III ¶ 21 (quoting D.I. 31 ¶ 21).[20] Plaintiff heard about this for the first time months after it happened. *See* ECF No. 37 at PageID 423-24, 428.

---

[19] "The profound impact of the n-word, and of it being directed at others, particularly in the workplace, has been recognized in other cases. . . . While there can be little doubt that the n-word being directed to another person would be offensive and demeaning, evaluation of the Plaintiff's claim nonetheless requires the assessment of such a [] [] claim." *Thomas v. Bronco Oilfield Servs.*, 503 F. Supp. 3d 276, 299-300 (W.D. Pa. 2020).

[20] Based on Plaintiff's testimony provided in the July 2022 EEOC Hearing, this patient was the Vietnam Vet, who requested a prescription refill on January 28, 2018. *See* ECF No. 37 at PageID 423.

On January 28, 2018, a "Vietnam Vet" messaged Dr. Chavarry's PACT to request a prescription refill. *See* ECF No. 37 at PageID 636; *see also* D.I. 36 at 9. During the exchange of messages, the Vietnam Vet wrote that "[he] [was] tired of [Plaintiff] giving [him] a hard time..lecturing [him] everytime [he] send[s] an Secure Message." ECF No. 37 at PageID 635. The Vietnam Vet also wrote that "[t]here is no need for [Plaintiff] to correspond with me anymore." *Id.*

On January 30, 2018, Plaintiff wrote to Nurse Ryan that: "[Plaintiff] just got a secure message of a vet wanting [Plaintiff] not to contact him." *Id.* at PageID 638. Plaintiff also wrote she "will respect his request." *Id.* On January 31, 2018, Nurse Ryan responded that: "Mr. [REDACTED] has requested he receive no contact from Paula Ammar . . . . Ms. Ammar can still assist with getting necessary documentation or med refills and so on but all direct contact, phone calls, and secure messages with the patient I request be made by Julia [Medeiros] or Dr. Chavarry." *Id.*

As noted previously, "[i]n March 2018, an unknown person wrote 'KKK' in the men's bathroom at the [Georgetown] Clinic." *Supra* Part III ¶ 22 (quoting D.I. 31 ¶ 22). "In response, [Nurse] Ryan contacted the police chief and asked that he visit the [Georgetown] Clinic to 'address safety issues related to the graffiti written on the bathroom wall.'" *Id.*; *see* ECF No. 31-15 at PageID 358.[21] "Plaintiff never saw the graffiti." *Supra* Part III ¶ 22 (quoting D.I. 31 ¶ 22); *see* ECF No. 47 at PageID 429.

---

[21] It is unclear how long Nurse Ryan waited to contact the police chief, after learning about the graffiti.

2.    **Legal Standard**

"To establish a hostile work environment claim under Title VII, a plaintiff must demonstrate that: '1) [T]he employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) [there was] *respondeat superior* liability.'" *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (alterations in original) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013)); *see Russo*, 2024 WL 3738643, at *7.[22]

"Analysis of hostile work environment claims requires an assessment of the totality of the circumstances." *Hanzer v. Mentor Network*, 610 F. App'x 121, 126 (3d Cir. 2015) (nonprecedential). "But in considering the totality of the circumstances, we filter out 'simple teasing, offhand comments, and isolated incidents.'" *Kokinchak v. Postmaster Gen. of the United States*, 677 F. App'x 764, 767 (3d Cir. 2017) (nonprecedential) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

"We 'concentrate not on individual incidents, but on the overall scenario,' when analyzing a hostile work environment claim." *Qin*, 100 F.4th at 471 (quoting *Caver v. City of Trenton*, 420 F.3d 243 (3d Cir. 2005)). "The Supreme Court has taught that we are to consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). "We must also look

---

[22] "The first four elements of this claim establish that a hostile work environment existed. The fifth element ... establishes the basis on which to hold the employer liable." *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 61 (3d Cir. 2019) (nonprecedential) (alteration in original) (quoting *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100 (3d Cir. 2009)).

to the frequency of the conduct in the context of the case." *Id.* "In considering the severity of the discriminatory conduct, we look to whether the conduct creates 'an attitude of prejudice that injects hostility and abuse into the working environment.'" *Id.* (quoting *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174 (3d Cir. 2020)).

3.    **Analysis**

As noted above, the parties dispute whether Defendant is entitled to summary judgment as a matter of law on Count I ("Title VII – Race Discrimination: Hostile Work Environment at the Georgetown Clinic"). To defeat the motion for summary judgment, Plaintiff must make a prima facie case of hostile work environment, which requires her to "establish the following five elements: (1) [s]he suffered intentional discrimination because of h[er] race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected h[er]; (4) the discrimination would have detrimentally affected a reasonable person of the same race in her position; and (5) there is a basis for employer liability." *Roberson v. Barretts Bus. Servs., Inc.*, No. CV 18-061-RGA, 2019 WL 4193977, at *6 (D. Del. Sept. 4, 2019).

The parties in the instant action dispute whether Plaintiff has met her burden of establishing a prima facie case of hostile work environment. Defendant contends that "Plaintiff has failed to produce any evidence that" (1) "the[] actions would have detrimentally affected a similarly situated black RN" and (2) that "the alleged discrimination was severe or pervasive." D.I. 30 at 15.[23] Plaintiff disagrees and asserts that she has met her burden. *See* D.I. 36 at 19. As explained below, the Court finds that, "[e]ven taking all of the acts complained of together, [Plaintiff] [has not]

---

[23] Defendant also contends that "Plaintiff has failed to produce any evidence that: (i) these actions were the result of intentional racial discrimination." *Id.* Given that the Court ultimately grants Defendant's motion for summary judgment on Count I, the Court will exercise its discretion and will not make a finding on Defendant's preceding contention. *Cf. Realtek Semiconductor Corp. v. Avago Techs. Int'l Sales Pte. Ltd.*, No. CV 24-1235-GBW, D.I. 60 at 22 (D. Del. Dec. 11, 2024).

establish[ed] a hostile work environment claim." *Stucke v. City of Philadelphia*, 685 F. App'x 150, 154 (3d Cir. 2017) (nonprecedential).

First, the Court agrees with Defendant that Plaintiff has failed to establish the fourth element of a hostile work environment claim. "The fourth [element], which asks whether 'the discrimination would detrimentally affect a reasonable person in like circumstances,' requires the court to evaluate the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance[.]'" *Davis v. Elwyn of Pennsylvania & Delaware*, No. 22-1646, 2023 WL 3918680, at *4 (3d Cir. June 9, 2023) (nonprecedential) (citation omitted and some alterations in original) (quoting *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265 (3d Cir. 2001)).

In this instance, the entirety of Plaintiff's contention on the fourth element is as follows: "a jury could find that a reasonable person in Plaintiff's position would likewise be detrimentally affected by [Nurse] Ryan's treatment of Plaintiff." D.I. 36 at 20 (citing *Abramson*, 260 F.3d at 280). Defendant responds that "[Plaintiff] does not even attempt to meet her burden to show that the alleged discrimination would have detrimentally affected a reasonable person in her position." D.I. 38 at 8. According to Defendant, "[Plaintiff's] failure to show that a reasonable person would have been detrimentally affected is fatal to her claim." *Id.* at 9.

The Court agrees with Defendant that Plaintiff "merely recites, without any factual support, that" the fourth element is met. *Id.* at 8. Plaintiff does not explain *why* a reasonable person in like circumstances would be detrimentally affected. Plaintiff also does not "advance [her] contention[] by connecting law to facts." *Sioson*, 303 F.3d at 460. "It is not [the Court's] responsibility, especially in a counseled case, to form [P]laintiff's arguments for h[er] by researching the record

and relevant case law." *Lipton*, 315 F. Supp. 2d at 440 n.3; *see APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) ("As we have noted on previous occasions, it is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.") (cleaned up).

Thus, the Court finds that Plaintiff's cursory contention is insufficient to establish that a reasonable person of the same race in her position in like circumstances would be detrimentally affected. *See, e.g., Jacobs*, 2025 WL 560626, at *3 ("We do not consider undeveloped arguments."); *ECB*, 2020 WL 5369076, at *4 ("[C]ursory arguments not fully developed by the parties are waived."); *Purewick*, 666 F. Supp. at 441 ("[A]rguments . . . not squarely argued[] are considered [forfeited].") (some alterations in original). This insufficiency by itself is grounds for granting Defendant's motion for summary judgment on Count I. *See, e.g., Hoist v. New Jersey*, 642 F. App'x 169, 172 (3d Cir. 2016) (nonprecedential) ("A Title VII hostile work environment claim requires proof of pervasive or severe discrimination that affected the plaintiff and would also affect a reasonable person."); *Cole v. Delaware Tech. & Cmty. Coll.*, 459 F. Supp. 2d 296, 308 (D. Del. 2006) ("Cole has not set forth evidence sufficient to demonstrate pervasive discrimination that would detrimentally affect a reasonable person of the same race in his same position. Therefore, there is no genuine issue of material fact, and I will grant the [m]otion [for summary judgment] with respect to Cole's hostile work environment claim.").[24]

Second, the Court agrees with Defendant that Plaintiff has failed to establish the second element of a hostile work environment claim. Under the second element, "[a]s part of her prima

---

[24] "In reaching this conclusion, [the Court] do[es] not intend to denigrate [Plaintiff]'s personal feelings. However, for a hostile work environment claim to survive summary judgment, the law requires more than a statement of the plaintiff's subjective reaction." *Cole*, 459 F. Supp. 2d at 308 n.11.

facie hostile work environment claim under Title VII . . ., [Plaintiff] must establish that she was

subjected to discrimination that was severe or pervasive." *Lamb v. Montgomery Twp.*, 734 F.

App'x 106, 112 (3d Cir. 2018) (nonprecedential). "The threshold for pervasiveness and regularity

of discriminatory conduct is high." *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir.

2014) (nonprecedential).

In this instance, the entirety of Plaintiff's contentions on the second element are as follows

((D.I. 36 at 20) (some alterations in original)):

> Plaintiff has demonstrated that Defendant's conduct was severe and pervasive, as
> it lasted more than one year, from April 2017 – approximately August 2018 when
> Mr. Griffiths finally allowed Plaintiff to remain at the Dover clinic away from Ms.
> Ryan. *See Richardson v. State of . . . [New Jersey-Off. of the Att'y Gen.*, No. CV
> 16-5711 (FLW), 2020 WL 13819830 (D.N.J. Jan. 31, 2020)] (nonprecedential)
> (finding one year of discriminatory treatment sufficient to be severe or pervasive).
> A jury could find that Plaintiff was detrimentally affected by the environment,
> particularly given that Plaintiff had to leave the Georgetown [C]linic to escape Ms.
> Ryan's discriminatory treatment. *See Abramson*, 260 F.3d at 280 ("A jury could
> also reasonably conclude that [plaintiff] was detrimentally affected by the
> environment, thereby fulfilling the third prong.").

Defendant responds that "Plaintiff argues that the alleged discriminatory conduct was pervasive

because it supposedly lasted more than one year, citing *Richardson* . . . . [b]ut *Richardson* does

not support Plaintiff's position." D.I. 38 at 7.

Again, Plaintiff fails to "advance [her] contentions by connecting law to facts." *Sioson*,

303 F.3d at 460.[25] For example, Plaintiff asserts that she "had to leave the Georgetown [C]linic to

escape [Nurse] Ryan's discriminatory treatment." D.I. 36 at 20. Yet, Plaintiff fails to explain why,

as a matter of law, that purported fact establishes that she was subjected to discrimination that was

severe or pervasive. "It is not [the Court's] responsibility, especially in a counseled case, to form

---

[25] In the one instance that Plaintiff does attempt to connect law to facts, D.I. 36 at 20 (citing *Richardson*), she provides an incorrect pinpoint citation to an opinion and misrepresents that opinion's findings.

[P]laintiff's arguments for h[er] by researching the record and relevant case law." *Lipton*, 315 F. Supp. 2d at 440 n.3; *see APS Sports*, 299 F.3d at 631.

Thus, the Court finds that Plaintiff's cursory contentions are insufficient to establish that Plaintiff was subjected to severe or pervasive discrimination. *See, e.g.*, *Jacobs*, 2025 WL 560626, at *3 ("We do not consider undeveloped arguments."); *ECB*, 2020 WL 5369076, at *4 ("[C]ursory arguments not fully developed by the parties are waived."); *Purewick*, 666 F. Supp. at 441 ("[A]rguments . . . not squarely argued[] are considered [forfeited].") (some alterations in original). This insufficiency by itself is an alternative ground for granting Defendant's motion for summary judgment on Count I. *See, e.g.*, *Hoist*, 642 F. App'x at 172 ("A Title VII hostile work environment claim requires proof of pervasive or severe discrimination."); *Davis v. Solid Waste Servs., Inc.*, 625 F. App'x 104, 107 (3d Cir. 2015) (nonprecedential) ("While Davis arguably has provided some evidence of unsafe working conditions, unfair disciplinary decisions, and an unprofessional boss, Title VII is not concerned with these issues. To support his claim of a hostile work environment, he was required to, but did not, produce evidence of intentional discrimination that was severe and pervasive."); *Hoist*, 642 F. App'x at 172 ("[T]here is insufficient evidence in the record from which a reasonable jury could conclude that the incidents Hoist relied upon to support her claim were sufficiently severe or pervasive. Summary judgment was therefore appropriate."); *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 106 (3d Cir.1994) ("[A] hostile environment claim requires proof of pervasive or severe intentional discrimination.")

For the reasons stated above, the Court finds that Count I fails as a matter of law.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** McDonough's Motion. An Order consistent with this Memorandum Opinion will be entered.